# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GALEN PRICE,

    Plaintiff,

      v.

INTERNATIONAL PAPER COMPANY,

    Defendant.

No. 17-cv-06097

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

This two-count tort action concerns injuries suffered by a truck driver who slipped while on the property of Defendant International Paper Company. On July 24, 2015, Plaintiff Galen Price, as he had hundreds of times previously, picked up a trailer at Defendant's Belleville, Illinois plant. After hitching the trailer, Plaintiff began to inspect it for safety. But while walking alongside the tractor-trailer, Plaintiff's foot slipped in a shallow gutter between Defendant's property and an adjoining street. This slip caused Plaintiff to twist his knee, resulting in injuries that required extensive medical treatment.

Plaintiff sued Defendant in an Illinois court and alleged both negligence and premises-liability counts. Defendant removed the case to this Court and, following a period of discovery, now moves for summary judgment. (R. 51.)[1] Defendant contends

---

[1] "R." denotes a citation to the docket. Subject matter jurisdiction exists under 28 U.S.C. § 1332(a): Plaintiff is an individual domiciled in the state of Illinois, and Defendant is a corporation incorporated in New York with its principal place of business in Tennessee. (R.

it owed Plaintiff no legal duty either to warn of the presence of the gutter or to remedy its condition.

Because Illinois law does not impose a legal duty upon a possessor of land under these circumstances, the Court finds that summary judgment is warranted. A premises owner need not anticipate and guard against every potential hazard, including, as here, the possibility that an encounter with a gently sloped, inch-deep gutter might lead to a foot-slip. This finding is reinforced by the obviousness of the potential hazard in this case, a condition that Illinois law recognizes as a basis for declining to impose a duty on landowners. Accordingly, as explained more fully below, Defendant's motion for summary judgment is granted.

## I.      BACKGROUND

Defendant owns and operates a plant at 3001 Otto Street in Belleville, Illinois. (R. 55 ¶ 10.) The plant includes loading docks, trailer pickup/drop-off areas, and trailer parking/staging areas. (*Id.* ¶¶ 14, 27; R. 58 ¶ 6; R. 54 at 1.) As demonstrated in the photograph below, at the dividing line between Defendant's property and Otto Street north of the loading docks, there is a one-inch deep, approximately 17-inch wide, concrete gutter. (*Id.* ¶¶ 17, 19 (see picture below).)

---

53 Ex. A, ¶¶ 5-6; R. 55 ¶¶ 1-2, 6.) Plaintiff seeks full recoupment of his medical bills, which exceed $100,000. (*Id.* ¶¶ 8-10.)



(R. 53-8 at 9.) This gutter is intended to drain water from Otto Street and Defendant's property to a drainage well at the end of the pavement. (R. 55 ¶ 20.)

Plaintiff, a truck driver, picked up trailers from the Otto Street plant for more than three and a half years. (*Id.* ¶¶ 21-24.) During that time, Plaintiff visited the plant hundreds of times and was familiar with it. (*Id.* ¶¶ 24, 28.) Typically, Plaintiff either waited for a "spotting service" to pull his trailer out of the dock and bring it to a staging area, or, alternatively, Plaintiff hooked the trailer himself in one of the plant's trailer pickup areas or in a parking lot. (R. 56 ¶¶ 1-2, 5-8.) Plaintiff would perform an inspection of his tractor-trailer and then drive the trailer to its destination. (R. 55 ¶ 27.) Approximately 2% of the time, Plaintiff hitched his trailer in the area north of the loading docks where the gutter ran. (*Id.* ¶ 32.) Typically, on

those occasions when drivers picked up trailers in this area, they moved the trailer to a staging area before conducting their inspection. (*Id.* ¶ 34.)

July 24, 2015 was one of those occasions. (*Id.* ¶ 4.) In the middle of a clement summer's day, Plaintiff hitched his trailer in the area near the gutter. (*Id.* ¶¶ 33-35.) Rather than proceed to a parking or staging area to perform his inspection, however, Plaintiff conducted his inspection at the spot where he hitched the trailer. (*Id.*) As Plaintiff inspected the trailer's lights, he stepped into the gutter, lost his footing on some dirt and gravel, and twisted his knee. (*Id.* ¶¶ 37-38.) Plaintiff's knee injury required extensive medical treatment costing more than $100,000. (R. 47; R. 53, Ex. A ¶ 10; R. 56-4.)

Plaintiff began this action in an Illinois state court with a two-count complaint alleging negligence (Count I) and premises liability (Count II). (R. 1.) Plaintiff does not contend the gutter was defectively designed (R. 55 ¶ 44), but rather that his injuries were caused by Defendant's "failure to reasonably remove accumulated gravel and dirt from [the] gutter. . . ." (R. 56-5 at 12.) Plaintiff further contends that the gutter was "in a foreseeable pedestrian path" and that Defendant failed "to mitigate, warn of, or barricade the hazard." (*Id.*) Following Defendant's removal of the case to this Court and a resulting period of discovery, Defendant moved for summary judgment on the basis that it owed Plaintiff no duty. (R. 51-52.) That motion is now before the Court for decision.

## II.    LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary-judgment stage, a district court must view the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But as "the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III.    ANALYSIS

This diversity action arises from events that took place in the state of Illinois. (R. 1.) State law "provides the substantive law in a diversity action[.]" *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006). Accordingly, the Court must "predict how the Illinois Supreme Court would decide the issues presented here." *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). Where the Supreme Court of Illinois "has not ruled on an issue, decisions of the Illinois Appellate Courts

control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Id.*

Under Illinois law, premises liability and negligence are distinct torts with distinct elements that should be analyzed "separately and fully." *Donald v. Target Corp.*, No. 15 C 5714, 2016 WL 397377, at *1 (N.D. Ill. Feb. 2, 2016) (collecting cases) ("Courts have recognized the independence of these two claims and have highlighted the different elements required to prove each one"). Accordingly, the Court will address each claim in turn.

A.  **Negligence**

To prevail on an ordinary negligence claim under Illinois law, a plaintiff "must prove that: (1) the defendant owed a duty of reasonable care to the plaintiff; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury." *Hickey v. Target Corp.*, 12 CV 4180, 2014 WL 1308350, at *3 (N.D. Ill. Apr. 1, 2014). Where a business invitee "is injured by slipping on a foreign substance, the defendant business may be liable if the substance was placed on the premises by the negligence of the proprietor or its agents." *Id.* (citing *Olinger v. Great Atl. & Pac. Tea Co.*, 173 N.E.2d 443, 445 (Ill. 1961)). Summary judgment is proper where "no further evidence is offered other than the presence of the substance and the occurrence of the injury[.]" *Olinger*, 173 N.E.2d at 446.

Plaintiff has presented evidence that his injury was caused by gravel and dirt that accumulated inside a gutter on the edge of Plaintiff's property. (R. 56-4.) Plaintiff has not, however, presented any evidence that the dirt or gravel "was placed on the

6

premises by the negligence of" Defendant or its agents. *Hickey*, 2014 WL 1308350, at *3. Put another way, Plaintiff has presented no evidence that Defendant caused the dirt and gravel to accumulate in the gutter. On the contrary, the only evidence that speaks to the source of the debris suggests that it came from a city street. (R. 55 ¶ 15 ("Otto Street is comprised of tar and chip. . . It is not maintained by IPC. . . ."); ¶ 40 ("Plaintiff's expert witness, forensic architect Anthony Fenton, stated that the gravel was consistent with what would come off the tar and chip pavement on Otto Street").)

Plaintiff argues that, even if IPC "did not directly cause the accumulation of dirt, gravel and debris in the gutter, this does not relieve of its duty to maintain its premises in a reasonably safe condition." (R. 54 at 11.) This statement correctly describes a duty that *can* arise under certain circumstances—but, as explained below, only in the context of a premises liability claim, not an ordinary negligence claim. As explained above, Illinois courts have held that a plaintiff proceeding under an ordinary negligence theory must offer more than the mere "presence of the substance and the occurrence of the injury[.]" *Olinger*, 173 N.E.2d at 446. Where a plaintiff who alleges ordinary negligence has failed to present evidence "from which it could be reasonably inferred that the substance was more likely to have been dropped by defendant's servants than by third persons[,]" the defendant is entitled to summary judgment. *Id*.

From the discovery conducted in this case, the only record evidence that even suggests the source of the debris in the gutter points to ordinary detritus from "the tar and chip pavement on Otto Street." (R. 55 ¶ 40 (testimony of Plaintiff's expert

witness.) Plaintiff has put forward no evidence from which a reasonable jury could find that the accumulated debris was placed in the gutter through the negligence of Defendant. Because *Olinger* and later Illinois cases establish that this is not enough to survive summary judgment, 173 N.E.2d at 446, Defendant is entitled to summary judgment on Plaintiff's ordinary negligence claim. *Id.*

### B. <u>Premises Liability</u>

Although Plaintiff's failure to present evidence regarding the source of the dirt and gravel defeats his ordinary negligence claim, Defendant could still be liable under a premises liability theory if it knew or should have known of the presence of a dangerous condition and failed to exercise reasonable care to protect invitees against the danger. *Hickey*, 2014 WL 1308350, at *3. Defendant does not deny that it knew about the gutter; rather, Defendant argues that it did not owe Plaintiff a duty to remedy the condition of the gutter. (R. 52 at 5.)

Under Illinois premises liability doctrine, landowners "have a duty to correct dangerous conditions of which they know or reasonably should know." *Albert v. Bank of Am., N.A.*, No. 12 C 9785, 2016 WL 542151, at *5 (N.D. Ill. Feb. 9, 2016) (applying Illinois law) (citing *Ohio Cas. Grp. v. Dietrich*, 285 F. Supp. 2d 1128, 1131 (N.D. Ill. 2003) (applying Illinois law)). Whether a duty exists in a premises liability case "is a question of law to be determined by the court." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990); *Happel v. Wal–Mart Stores, Inc.*, 766 N.E.2d 1118, 1123 (Ill. 2002). In determining whether a "duty is owed in a premises liability case, the court considers: (1) the likelihood of injury; (2) the reasonable foreseeability of such an

8

injury; (3) the burden of guarding against such an injury; and (4) the consequences of placing that burden on a defendant." *Simich v. Edgewater Beach Apartments Corp.*, 857 N.E.2d 934, 944 (Ill. App. Ct. 2006); *see also Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018) (applying Illinois law) (citing *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010)). In addition, courts will not impose a duty to correct "open and obvious" dangers—*i.e.*, those the landowner could reasonably expect people on the property would discover or would protect themselves against. *See Hope v. Hope*, 924 N.E.2d 581, 584 (Ill. App. Ct. 2010); *Lee v. Moran Foods, Inc.*, 2012 WL 5048482, at *2 (N.D. Ill. Oct. 18, 2012) (applying Illinois law).[2]

Defendant contends it did not owe Plaintiff a duty as a matter of law, for two reasons: (1) the gutter did not present an unreasonable risk of harm; and (2) any risk of harm was open and obvious. (R. 52 at 1, 5.) These issues are addressed in turn.

> 1. *Whether the Gutter Presented an Unreasonable Risk of Harm*

> a. Application of the "*de minimis* rule"

Plaintiff does not dispute that the gutter was only an inch deep. (R. 55 ¶ 19.) From this, Defendant concludes "Plaintiff's complaint falls squarely within Illinois' *de minimis* rule[.]" (R. 52 at 6.) Under that rule, "absent any aggravating factors, a vertical displacement of less than two inches is *de minimis*." *St. Martin v. First Hospitality Grp., Inc.*, 9 N.E.3d 1221, 1225 (Ill. App. Ct. 2014); *Gresser v. Union Pac. R.R. Co.*, 130 F. Supp. 2d 1009, 1015 (C.D. Ill. 2001) (applying Illinois law) ("Illinois

---

[2] As *Simich* explained, the "open and obvious" doctrine falls under the foreseeability factor of the four-part duty test. 857 N.E.2d at 944-45, 947 (citing *Ward*, 554 N.E.2d at 229-30; Restatement (Second) of Torts, §§ 343 and 343A).

law suggests that defects under two inches, absent other circumstances, are not actionable"); *Morris v. Ingersoll Cutting Tool Co.*, 1 N.E.3d 45, 50 (Ill. App. Ct. 2013) (inch-and-a-half drop in an industrial loading dock *de minimis*).

Although Defendant cites a number of factually-similar Illinois decisions in which liability was precluded based on the *de minimis* nature of a vertical displacement, the Court does not find that the so-called "*de minimis* rule" requires a judgment for Defendant. To begin, the two-inch rule is not a "bright-line test[.]" *Hartung v. Maple Inv. & Dev. Corp.*, 612 N.E.2d 885, 888 (Ill. App. Ct. 1993) ("each case must be determined on its own facts"); *see also Morris*, 1 N.E.3d at 48 (same). Nor does it appear to establish a presumption or shift any burdens. *See, e.g., Barrett v. FA Grp., LLC*, 90 N.E.3d 537, 548 (Ill. App. Ct. 2017) (loose asphalt and dim lighting gave rise duty to fix less than two inch defect in pedestrian area); *Bartkowiak v. City of Aurora*, 102 N.E.3d 842, 850 (Ill. App. Ct. 2018), *appeal denied*, 108 N.E.3d 803 (Ill. 2018) ("bottleneck design" of parking lot and " 'madhouse' conditions" of traffic created duty to fix less than two-inch defect); *Harris v. Old Kent Bank*, 735 N.E.2d 758, 764-65 (Ill. App. Ct. 2000) (defendant had duty to fix fewer than two-inch defect because defect was located near business's primary point of ingress/egress); *Bledsoe v. Dredge*, 681 N.E.2d 96, 97-99 (Ill. App. Ct. 1997) (defendant had duty to fix fewer than two-inch defect located indoors because "indoor flooring is not exposed to weather and can be more easily monitored for defects").

Moreover, Illinois courts that have analyzed the two-inch rule routinely explain that "no mathematical standard can be used to determine when a defect is so

minor as to not be actionable." *Mass v. City of Naperville*, No. 93 C 7170, 1995 WL 584403, at *4 (N.D. Ill. Oct. 2, 1995) (applying Illinois law); *Warner v. City of Chicago*, 378 N.E.2d 502, 503 (Ill. 1978) ("No mathematical standard can be adopted in fixing the line of demarcation") (alterations accepted and quotation marks omitted); *see Bohm v. Planned Prop. Mgmt., Inc.*, 2019 IL App (1st) 172936-U, 2019 WL 1028058, at ¶¶ 43-48 (collecting decisions and concluding that lower courts have "misconstrued" Illinois Supreme Court precedent as adopting the two-inch *de minimis* rule).

Whatever general effect the *de minimis* rule may hold under Illinois law, the Court finds that it does not directly control the resolution of this case. This stems from the rule's function as an excuse for *defects*, not intentional designs. Illinois courts have recognized that private landowners "should not be required to maintain perfect outdoor sidewalks because of the large area involved, and the extreme and changeable weather conditions in Illinois." *Bledsoe*, 681 N.E.2d at 97 (citing *Gleason v. City of Chicago*, 547 N.E.2d 518, 519 (Ill. App. Ct. 1989) and *Birck v. City of Quincy*, 608 N.E.2d 920, 923 (Ill. App. Ct. 1993)); *see also Hartung*, 612 N.E.2d at 888 (extending to property owners the *de minimis* rule traditionally applied to municipalities). Thus the *de minimis* rule appears intended to protect property owners from having to fix every defect on their property, no matter how minor or inevitable in the harsh environment of Illinois.

A rule that excuses defects in pavement, however, is of questionable effect where the "defect" is, like here, intentional and directed to a purpose. Plaintiff and

Defendant agree that the gutter was designed to drain water. (R. 55 ¶ 20.) Because a change of elevation is the means by which the gutter accomplishes this purpose, the one-inch drop is a feature, not a bug. Because it would be illogical to apply a rule of forgiveness to an intended feature, the *de minimis* rule ought not control this case.

### b. The four duty factors

Although the *de minimis* rule does not control, it does not follow from this holding that Defendant necessarily owed Plaintiff a duty. On the contrary: the gutter's usefulness weighs against imposing a duty on Defendant. *See Phillips v. J. F. Martin Cartage Co.*, 356 N.E.2d 1237, 1240 (Ill. App. Ct. 1976) (considering "appropriate and useful purpose" of container that caused plaintiff's injury to determine whether warehouse owner owed plaintiff a duty). In deciding whether a duty exists, of course, courts must consider: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Dunn*, 880 F.3d at 906. None of these factors supports Plaintiff's contention that it was reasonably foreseeable to Defendant that "truck drivers would walk . . . over or in the gutter" and that an "accumulation of dirt, gravel, and debris" would transform an inch-deep gutter into a dangerous condition. (R. 54 at 5-6, 13.)

### i) Duty factors: magnitude and consequences of the burden

Turning initially to the third and fourth duty factors (magnitude of the burden and the consequences of placing it on a landowner), the Court holds that requiring an entire industrial lot to be kept perpetually gravel- and dirt-free would amount to an

insuperable burden inconsistent with Illinois law. *See Ford v. Round Barn True Value, Inc.*, 883 N.E.2d 20, 28 (Ill. App. Ct. 2007) ("to guard against injury, a parking lot owner would have to keep the lot free of gravel, which would be a great burden as gravel is usually found on parking lots"); *Ahmed v. Pickwick Place Owners' Ass'n*, 896 N.E.2d 854, 864 (Ill. App. Ct. 2008) (refusing to impose duty to clear dirt and noting it would be "onerous to require a landowner to remove all of the naturally accumulated dirt from every sidewalk on his property").

Were Plaintiff's approach to be adopted, landowners like Defendant would be required regularly to clear gutters such as the one here. (*See* R. 58-1 at 2.) Conversely, Defendant would have to remove a useful safety feature to eliminate any possibility of injury from accumulated debris in the gutter. Either measure would be both burdensome and of little public utility; indeed, it is possible that the removal of the gutter could in fact *heighten* the risk of injury from standing water.

Plaintiff argues the burden is slight because Defendant would not need either to clear the dirt and gravel or remove the gutter. (R. 54 at 8.) Rather, Plaintiff suggests Defendant had only to paint "[a] simple strip of yellow paint where the edge of the gutter meets the concrete staging and parking area. . . ." (*Id.*) Plaintiff's art-of-the-possible standard, however, exceeds the requirements of Illinois law. In assessing the burden of "guarding against" potential harm, *Dunn*, 880 F.3d at 906, a court should not frame the inquiry in terms of conceivable eventuality; instead, it must consider the burden of protecting against a reasonably foreseeable injury. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 652 (7th Cir. 2014) (declining under

13

Illinois law to impose duty of "continuous monitoring and patrolling of a store's safety conditions" because doing so would be too burdensome) (citing *Howard v. Wal–Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir. 1998) (same)).

In this case, the record itself undercuts Plaintiff's yellow-stripe suggestion. Plaintiff contends that he was too distracted performing his trailer inspection to look down and see the gutter. (R. 54 at 11-13.) But if Plaintiff was so distracted that he could not look down, it is equally likely he would have failed to notice a yellow caution marker next to the gutter. Plaintiff's distracted state defeats his argument: for where, as here, the usefulness of the proposed measure is low, a court should resist the temptation to impose a duty even if the burden is also low. *See McCarty v. Menards*, 319 F. Supp. 3d 974, 989 (N.D. Ill. 2018) ("plaintiff's suggestion of constant and continuous surveillance is not only impractical, but to impose such a burden would tend to take premises liability into the realm of strict liability, and that's a bridge too far"), *reconsideration denied*, 327 F.R.D. 177 (N.D. Ill. 2018*), and aff'd sub nom. McCarty v. Menard, Inc.*, 927 F.3d 468 (7th Cir. 2019). Based on these considerations, therefore, the Court holds that the "burden" factors (that is, the magnitude of the burden and the consequences of placing that burden on Defendant) do not support Plaintiff's case.

ii) <u>Duty factors: likelihood and foreseeability of injury</u>

Because the foreseeability and likelihood of injury considerations support Defendant's position, the remaining considerations must strongly weigh in Plaintiff's favor for the Court to find that Defendant owed Plaintiff a duty. *See Bucheleres v.*

*Chicago Park Dist.*, 665 N.E.2d 826, 837 (Ill. 1996) (discussing interplay between burden factors and risk factors). Neither factor, however, supports Plaintiff's case.

As to foreseeability, the record shows that the gutter was in an area where truck inspections do not typically occur. (R. 56 ¶¶ 1-2, 5-8.) Plaintiff admits he picked up the trailer in that area just one time in fifty. (R. 55 ¶¶ 27, 32.) There is thus little evidence that Defendant should have foreseen that Plaintiff would conduct an inspection in that area and unwittingly step in the gutter.

This holding is supported by factually-similar Illinois precedent. In *Morris v. Ingersoll Cutting Tool Co.*, a truck driver exiting his cab was injured when he fell after stepping into an inch-and-a-half depression in an industrial loading bay. 1 N.E.3d at 47, 49. At summary judgment, the plaintiff driver argued that, because drivers routinely traversed the loading bay, his injury was foreseeable. *Id*. The plaintiff therefore urged that the court impose the same duty to fix defects in the loading area that it had, in *Harris v. Old Kent Bank*, previously imposed on owners of sidewalks. *See* 735 N.E.2d 758, 763-64 (Ill. App. Ct. 2000) (bank had duty to repair even minimal defects because sidewalk was used by every customer entering or exiting bank).

*Morris* rejected this argument. The court first noted that the "imposition of a legal duty requires more than a mere possibility of occurrence and is based on the foreseeability of harm[.]" *Morris*, 1 N.E.3d at 53 (quotation marks omitted). Unlike in *Harris*, the "foreseeability of the harm [wa]s greatly diminished" because "the loading bay area was not a pedestrian means of ingress and egress to the facility, but was

15

meant for vehicular traffic." *Id.* at 52 ("[W]hereas in *Harris* all customers entering or exiting the bank would traverse the sidewalk in question, not all drivers parking at defendants' facility would encounter the defect while entering or exiting their vehicles"). *Morris* therefore refused to impose the same duty to repair a 1.5-inch defect on owners of industrial loading areas than other Illinois courts had imposed on the owners of heavily trafficked pedestrian areas. *Id.* at 51-53.

*Morris*'s reasoning controls here. Plaintiff contends it was foreseeable that an "accumulation of dirt, gravel and debris would hide the gutter, obscuring a condition that could cause injury. . . ." (R. 54 at 7-8.) It is correct that "a 'seemingly innocuous incline' can become unreasonably dangerous when combined with other conditions impairing traction." *Huggins v. Vill. of Bishop Hill*, 690 N.E.2d 656, 660 (Ill. App. Ct. 1998) (quoting *Ralls v. Vill. of Glendale Heights*, 598 N.E.2d 337, 345 (Ill. App. Ct. 1992) ("[T]he seemingly innocuous incline became unreasonably dangerous when combined with other conditions" impairing traction)).

Given the circumstances here (a one-inch-deep, gently-sloped gutter containing a small amount of gravel and dirt), this is not a case in which the combined conditions rendered an innocuous feature unreasonably dangerous. *Contrast Ford*, 883 N.E.2d at 28 (gravel in parking lot not dangerous because "gravel is something most people encounter without injury") and *Ahmed*, 896 N.E.2d at 863 (dirt on sidewalk "is not inherently dangerous or hazardous") *with Huggins*, 690 N.E.2d at 660 (gravel that obscured the severity of incline of a five-foot slope next to a public sidewalk was dangerous); *Ralls*, 598 N.E.2d at 345 (ice on heavily trafficked

pedestrian walkway was dangerous). As the record photographs show, there is no reasonable possibility that the gutter could have been completely hidden from view by gravel and dirt. (*See* R. 53-8 at 5-9.)

Plaintiff's cited authority does not compel a different result. Plaintiff relies on *Ward* and *Reed v. Wal-Mart Stores, Inc.*, but those cases involved plaintiffs who encountered far more hazardous conditions in far more heavily trafficked areas than did Plaintiff. *See Ward*, 554 N.E.2d at 226 (store patron injured by concrete posts blocking store entrance/exit); *Reed,* 700 N.E.2d 212, 214 (Ill. App. Ct. 1998) (invitee injured by rusty nail protruding from board located on pathway meant for walking). Neither *Ward* nor *Reed* mandates a finding that Plaintiff's injury was reasonably foreseeable.

Plaintiff also relies (R. 54 at 13-14) on *Barrett*, in which the plaintiff stepped into a shallow pothole in the defendant's parking lot and fell. 90 N.E.3d at 541. After the trial court granted summary judgment for defendant based on the *de minimis* rule, the Appellate Court of Illinois reversed based on the following facts: (1) "plaintiff's injury occurred at night, in an area with dim lighting . . ."; (2) the pothole was located in a "crowded parking lot"; and (3) the Plaintiff's injury was caused by "broken pavement or broken asphalt within the pothole[.]" *Id*. at 547-48, 549.

If anything, *Barrett* undermines Plaintiff's argument. Unlike in *Barrett*, the injury here occurred in the middle of a sunny, dry day. (R. 55 ¶¶ 33-35.) It also occurred in a little-used area of an industrial facility, rather than a crowded

commercial parking lot. (R. 56 ¶ 32.) To be sure, Plaintiff notes that his injury, as in *Barrett*, was caused by loose impediments, not a change of elevation in the pavement. (R. 54 at 14.) But Plaintiff overlooks another important distinction: namely, that the defects in *Barrett* were the result of the defendant's failure to fix the pothole. In contrast, there is no evidence that the materials Plaintiff encountered here came from any deterioration of the gutter. *Contrast Barrett*, 90 N.E.3d at 547 *with* R. 55 ¶ 40.

For all of these reasons, the Court finds that the condition of the gutter was not unreasonably dangerous under the four-factor Illinois duty test. *See Simich*, 857 N.E.2d at 944. Accordingly, because Defendant owed Plaintiff no duty, summary judgment in Defendant's favor is warranted.

### B. The Condition of the Gutter Was Open and Obvious

Beyond its argument that the gutter was not unreasonably dangerous, Defendant also contends (R. 52 at 11-14) that Defendant owed no duty because the condition was "open and obvious." *See LaFever v. Kemlite Co.*, 706 N.E.2d 441, 447 (Ill. 1998) (court that failed to consider "open and obvious" exception in conducting duty analysis "reached [its] holding by a flawed analytical route"). Plaintiff denies that the condition of the gutter was open and obvious. (R. 54 at 11-14.)

Under the open and obvious doctrine, a landowner "is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them. . . ." *LaFever*, 706 N.E.2d at 447 (quoting Restatement (Second) of Torts § 343A(1) (1965)). A carve-out to the doctrine is the "distraction exception," under which liability for open and obvious dangers remains

where a landowner "should anticipate the harm despite such knowledge or obviousness." *LaFever*, 706 N.E.2d at 447.

Even viewing the record in the light most favorable to Plaintiff, the condition of the gutter was open and obvious. An open and obvious condition exists "where a reasonable person in the plaintiff's position exercising ordinary perception, intelligence and judgment would recognize both the condition and the risk involved." *Montenegro v. Voltattorni*, No. 1-09-2632, 2011 WL 9918782, at \*2 (Ill. App. Ct. Mar. 11, 2011). Because property owners "are entitled to the expectation that those who enter upon their property will exercise reasonable care for their own safety," this analysis "depends not on plaintiff's subjective knowledge but, rather, on the objective knowledge of a reasonable person confronted with the same condition." *Sandoval v. City of Chicago*, 830 N.E.2d 722, 727 (Ill. App. Ct. 2005).

The photographs submitted to the record show that any danger presented by the gutter was open and obvious. (R. 53-8 at 5-9); *see Montenegro*, 2011 WL 9918782, at \*3 ("The pictures on record . . . show the open and obvious nature of the crack"). Plaintiff disputes this conclusion by noting that, at his deposition, he "was not asked whether any of the photographs showed the condition of the gutter at the time of the occurrence." (R. 54 at 11.) Rather, he testified at deposition that "the accumulation of dirt, gravel and debris in gutter [*sic*] was such that he could not see where the gutter started and where it ended." (*Id*.) Thus, according to Plaintiff, the parties "disagree as to the condition of the gutter at the time of the occurrence" and therefore "whether

the condition was open and obvious is a question of fact" to be decided at trial. (*Id.* at 12.)

At the outset, the Court questions whether there is a genuine dispute as to the condition of the gutter. Plaintiff does not cite any evidence suggesting the condition of the gutter at the time of the incident was different from what the pictures depict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) (no genuine issue "if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to" find for the party opposing summary judgment). And Defendant explains, plausibly, that its counsel did not ask Plaintiff about gravel at his deposition because Plaintiff did not mention gravel in his initial complaint. (*See* R. 57 at 9 n.2.) Most pertinently, Plaintiff's own expert testified that he relied on the photographs to reach his conclusions (R. 53-9 at 39:4-12) and that he thought they accurately reflected the amount of gravel in the gutter at the time of the incident. (*Id.* at 40:10-14.)

At any rate, the undisputed facts make clear that any danger was open and obvious. The gutter is visible in every picture of record, showing that gravel and dirt could not reasonably be found to have obscured the existence of the gutter entirely. (R. 53-8 at 5-9; R. 55 ¶ 40) Moreover, Plaintiff's injury occurred in the middle of a clear, dry day. *Montenegro*, 2011 WL 9918782, at *3 ("It was not dark at the time the injury occurred. . . ."); *cf. Wade v. Wal-Mart Stores, Inc.*, 39 N.E.3d 1141, 1146 (Ill. App. Ct. 2015) (pothole in asphalt on "clear, dry night" was open and obvious). And although Plaintiff cites testimony from one of Defendant's employees suggesting that

20

the gutter could be hidden from view by water, dirt, mud, and gravel (R. 58 ¶ 10), Plaintiff—who had visited the property on hundreds of occasions—does not contend that it was muddy on the day of the accident. (R. 55 ¶ 35.) Indeed, there is no dispute that Plaintiff could have avoided the gutter had he been looking down. *Cf. Montenegro*, 2011 WL 9918782, at *3 ("We believe there is no question of fact that plaintiff could have avoided the crack if he had been looking down while walking"). Because Defendant was not required to foresee that Plaintiff would fail to watch his step, *id.* at *4 ("[D]efendants do not need to anticipate that a plaintiff would blind himself to the consequences of his own actions"), the Court holds that any danger presented by the gutter was open and obvious.

Liability for an open and obvious condition, however, can still exist in certain instances under the distraction exception. That carve-out to the open and obvious doctrine applies where the defendant has "reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned[.]" *Bucheleres*, 665 N.E.2d at 834. But, in turn, where a plaintiff's attention "is diverted by her own independent acts for which the defendant has no direct responsibility, the distraction exception does not apply." *Sandoval*, 830 N.E.2d at 729. In general, therefore, whether the distraction exception applies "turns on whether the defendant or plaintiff created the distraction." *Savage v. Ritchie Bros. Auctioneers (Am.), Inc.*, 10 CV 446, 2012 WL 1520710, at *4 (N.D. Ill. Apr. 30, 2012) (applying Illinois law) (citing *Whittleman v. Olin Corp.*, 832 N.E.2d 932, 936 (Ill. App. Ct.

2005)); *see also Sandoval*, 830 N.E.2d at 729 ("[I]n those instances where our courts have applied the distraction exception to impose a duty upon a landowner, it is clear that the landowner created, contributed to, or was responsible in some way for the distraction which diverted the plaintiff's attention from the open and obvious condition").

Plaintiff suggests he was distracted because he was performing an inspection of his truck. (R. 54 at 12-13.) But Plaintiff does not claim Defendant required (or even recommended) that Plaintiff conduct a truck inspection in the area near the gutter. (R. 55 ¶ 42.) And Plaintiff admits he conducted the fateful inspection in an area where inspections were not typically conducted. (R. 55 ¶ 27, 32-34); *cf. Montenegro*, 2011 WL 9918782, at *5 (distraction exception did not apply where plaintiff was "not in a place such as a construction site where it is reasonably foreseeable he would get distracted"). Plaintiff's attention was thus diverted by his "own independent acts," not the acts of Defendant. *Sandoval*, 830 N.E.2d at 729. Given this undisputed fact, the distraction exception cannot defeat the clear application of the open and obvious doctrine. *Id*. at 729-30.

Based on the record, the Court finds that, as a matter of law, the condition of the gutter in which Plaintiff slipped was open and obvious. Because Illinois law prevents imposition of a duty where a dangerous condition was open and obvious, *LaFever*, 706 N.E.2d at 447, summary judgment in Defendant's favor is appropriate.

## IV.    CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is granted.

SO ORDERED.

Date: October 13, 2020

_____

JOHN F. KNESS
United States District Judge